JS-3 STAYED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANK OTTO SCHLOR,<br>    aka Hartmut Schlor,<br>    aka Hartmut Haussecker,<br><br>    Defendant. | NO. CR-01-360-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY** |

Before the Court is Defendant's Motion to Dismiss the Indictment for Pre and Post Indictment Delay (Ct. Rec. 42). A hearing was held on the motion on November 5, 2008, in Los Angeles, California. Defendant was present and represented by Philip Deitch and Brian Shaughnessy. The Government was represented by Assistant United States Attorneys Paul Stern and Christine Ewell.

## DISCUSSION

The Sixth Amendment to the Constitution guarantees that criminal defendants "shall enjoy the right to a speedy and public trial. . . ." U.S. Const. Amend. VI. Defendant claims that he was denied this right and that the Court must dismiss the charges made against him.

Defendant was indicted on April 26, 2001, for conduct occurring between 1992 and 1996. He was arrested in June 2007, in Marbella, Spain, was notified of the nature of the charges a few months later, and was informed of the actual

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 1**

charges contained in the Indictment in June 2008 at his arraignment. Trial was set to begin on December 2, 2008. Consequently, over seven years passed after the indictment was returned and the Defendant was notified of the charge and between twelve and sixteen years passed from the alleged offense and Defendant's notification of the charge.

At the outset of any analysis of the speedy trial right, it is important to note that the Constitution places the obligation to provide a speedy trial on the Government, not the defendant. *United States v. Mendoza*, 530 F.3d. 758 (9th Cir. 2008). In the ordinary course, a speedy trial is provided by the manner in which criminal prosecutions arise; that is, most crimes involve specific events that result in arrest and prosecution. The time between the criminal event and the trial are caused by proceedings in which the accused and the courts participate. A speedy trial problem most often arises when a person has fled the area to avoid prosecution knowing that prosecution has started. Courts have easily found that a defendant's own effort to avoid a trial generally will not result in a denial of a speedy trial. Where a defendant knows that a charge has been made, the deliberate effort to avoid arrest and prosecution causes the delay in the trial and is not the fault of the Government. *United States v. Sandoval*, 990 F.2d 481, 484 (9th Cir. 1993).

More problematic is the situation where the Government asks the Court to seal an indictment so that an accused does not know that a charge has been filed. An arrest warrant is issued when the Indictment is returned but the Indictment is not unsealed until the arrest has been made. The sealing of the Indictment is justified by the Government's representation to the Court that an accused is likely to flee if the existence of the charge is made known. In such circumstances, the obligation to provide a speedy trial imposed on the Government is most clear because it alone knows of the charge. Such is the case of Defendant.

Defendant asks that the Court dismiss the Indictment because of both pre-trial and post-trial delays. Specifically, Defendant argues that the Indictment

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 2**

should be dismissed because it was initiated beyond the applicable statute of limitations; Defendant's Fifth Amendment due process rights were violated because of prejudicial pre-indictment delay; and Defendant's Sixth Amendment rights were violated because of post-indictment delay and the failure of the Government to make a diligent good faith effort to bring Defendant before the Court for trial.  Each of these arguments will be addressed in turn.

**A.     Pre- Indictment Delay**

The Fifth Amendment protects the due process rights of defendants against excessive pre-indictment delays.  In most cases, the statute of limitations will protect a defendant's due process right.  *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007).  In some cases, however, the Due Process Clause requires dismissal of an indictment that is brought within the statute of limitations period.[1]  *Id.*  In such a case, the indictment will be dismissed if the defendant can show "actual, non-speculative prejudice from the delay" and that the delay "offends those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'"  *Id.*  Establishing prejudice is a heavy burden that is rarely met.  *Id.*  Generalized assertions of loss of money, witnesses, or evidence are insufficient to establish actual prejudice.  *Id.*  To meet his burden of showing actual prejudice, Defendant must show both that lost testimony, witnesses, and evidence has "meaningfully . . . impaired his ability to defend himself," and "the proof must demonstrate by definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to his case."  *Id.*

---

[1] Defendant is not conceding that the Indictment that was filed in this case was filed within the applicable statute of limitations.  Defendant does concede that factual issues prevent the Court from addressing his statute of limitations argument.  For purposes of the pending motions, the Court will assume that the Indictment was timely.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 3**

Here, the Government waited nearly nine years from the first instance of alleged wrongful conduct and nearly five years from the last instance of alleged wrongful conduct before seeking an indictment. Defendant asserts that he has not been able to locate key witnesses. Specifically, Defendant asserts that he cannot find Larry Merryman, who was Defendant's legal advisor during the time of the alleged wrongful conduct. Defendant asserts that Mr. Merryman would provide Defendant with the potential defense of advise of counsel. Additionally, Defendant asserts that there is another unnamed lawyer who he is attempting to locate who could testify regarding Defendant's assertion that he withdrew from the conspiracy before April 26, 2001.

These assertions fail, however, to distinguish between any prejudice caused by the failure to indict prior to 2001 compared to the prejudice as a result of the post-Indictment delay. As such, Defendant has not met his burden of showing actual prejudice resulting from pre-indictment delay. Accordingly, the Court denies the motion to dismiss based on pre-indictment delay.[2]

**B.     Post-Indictment Delay**

The Supreme Court and Ninth Circuit have given the district courts analytical tools to use in considering a claim of denial of the right to speedy trial. *See Doggett v. United States*, 505 U.S. 647 (1992); *Mendoza*, 530 F.3d. at 765. The district court is to consider five common sense factors relevant to such a claim: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; (4) the prejudice to the defendant; and (5) any other circumstances that the court deems relevant to the inquiry. *Id.* In balancing these factors and the relevant circumstances, the district court must be mindful "that the

---

[2]Even though the pre-indictment delay does not offend the Fifth Amendment, the nearly nine-year delay does factor into the Court's application of the Sixth Amendment balancing test as set forth in *United States v. Mendoza*.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 4**

accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.*

### 1. Length of the Delay

The length of the delay is measured from the time of the Indictment to the time of trial. *Mendoza*, 530 F.3d at 762. If the length of delay is long enough to be considered presumptively prejudicial (a delay of one year usually meets this threshold mark), the inquiry into the other facts of the balancing test is triggered. *Id.* In this case, the length of the delay is around seven years, a period that the court presumes is prejudicial. *Id.* Here, the Government concedes that the six-year delay from the time of the Indictment to the time of trial is presumptively prejudicial and that it is necessary to look at the other factors.

### 2. Reason for the Delay

The reason for the delay is generally the focus of the factual conflict observed in speedy trial cases. The Government can attempt to show two justifications for the delay. First, that the delay was caused by the defendant's effort to avoid prosecution; thus, the delay is attributed to the defendant and not the Government. Second, because the Government need not resort to "herculean efforts" to locate and bring an accused to trial, the Government can justify delay by showing it made reasonable efforts to bring the defendant to trial. *Mendoza*, 530 F.3d at 762; *Sandoval*, 990 F.2d at 485. The Government asserts both justifications apply in Defendant's case.

#### i. Delay Caused by Defendant's Efforts to Avoid Prosecution

The written record as well as the testimony offered at the evidentiary hearing establish the delay was not the fault of Defendant. Defendant left the United States to avoid the consequences of the failure of his business that led to his Indictment. The flight was also with intent to avoid arrest in the United States if he was charged with a crime. If charged, he wanted to deal with the Government from a position of strength, avoid pretrial custody, and deal with the Government with counsel present. Such a concern does not mean that he would not attend a trial if

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 5**

charged. Here, however, he did not even know that he had been charged with a crime until he was arrested in Spain in 2007.

The thrust of the Government's argument is that Defendant used a false name after he returned to Europe in 1996 to avoid arrest just like he fled to avoid arrest. The Government further contends that the false name prevented the Government from locating Defendant until 2004. This position is not supported by the evidence. While Defendant did business under the name Haussecker up until 1996, the Government knew he used the name of Frank Otto Schlor thereafter and, in fact, in 1997 sued him under that name. It also knew that he used the nickname "Hardy."

The Government contends that Defendant spelled his name Schloer (inserting an e after the o) while in Europe. The Government contends that the insertion of the letter 'e' was with intent to avoid detection by United States authorities. Defendant's passport spells his last name both ways, *i.e.* Schlor and Schloer. The alternate spelling is explained by the lack of an umlaut in word processors. Schlor is spelled with an umlaut over the 'o' in German. When no umlaut is present on a word processor, the o is changed to 'oe'. The different spelling of the name was not done by the Defendant with the intent to avoid arrest, but was the result of the nuances of the German language.

In European Union countries, a resident is required to register with the government. Defendant registered with the German government while in Germany and registered with the Spanish government when he moved to Spain in 2000. In 1997, United States authorities were able to physically locate him through German registration authorities and serve him with process. After he was indicted, no effort was made to locate him through German or Spanish registration authorities. Had such an effort been made in 2001 or thereafter, using the same name used in 1997, it is more likely than not that the Defendant would have been located. Defendant lived openly in Spain from 2000 to 2008. His picture and name

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY** ~ 6

appeared in magazines of general circulation, he had business dealings with United States agencies, and he visited the American Embassy using his passport as identification. Defendant did not hide his identity. He could have been located if an effort had been made to do so.

### ii. Reasonable Diligence

The second argument of the Government is that it used reasonable efforts to locate Defendant and that those efforts failed. The record establishes that the effort to locate Defendant was minimal at best.

After the Indictment was filed, the Government made a conscious decision to seal the Indictment and not inform Defendant, or anyone close to him, that he was under Indictment. The Government, based on 1997 information, believed the Defendant lived in Germany in 2001 when he was indicted. The Government asserts that it took three affirmative actions to locate Defendant thereafter. First, Defendant's name, and various variations of the name, were placed in the national law enforcement database. Such a filing would be routine and would only locate Defendant if he returned to the United States. The Government did not even take steps to confirm that their assumption was still correct, namely, that Defendant was still living in Germany at the time of the Indictment. Secondly, in May 2003, after learning that Defendant's girlfriend had traveled between Germany and the United States in April 2001, and between Spain and the United States in March and October of 2002, an application for an Interpol Red Notice was submitted to facilitate the location of Defendant in the event that he was encountered in a country where he might be subject to extradition to the United States. The results expected by the Government from such a notice is not in the record. Finally, in 2002 the Government questioned Bart Healy, a cooperating codefendent, regarding the whereabouts of Defendant. He had not seen the Defendant since 1996 and did not know where he had gone. He offered to assist in locating the Defendant, but his offer was declined.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 7**

The primary justification for the Government's failure to advise Defendant of the Indictment seems to be its belief that Defendant would not cooperate in extradition. This belief is based on his leaving the country, failure to cooperate with the SEC investigation in 1996-97, and a statement made by his girlfriend in an SEC deposition in 1997. Even if the Defendant would not have cooperated, such a lack of cooperation would not justify making no sincere effort to locate him after he was indicted. Locating the Defendant and advising him of the indictment are two different things. Had an effort been made to locate him in 2001, the Government would have found that he was in Spain where he could be extradited. If he was still in Germany, some analysis of the speedy trial issue could have been made. If notice of the charge were given to Defendant at that time, then the failure to obtain a speedy trial would be his responsibility thereafter. Based on the record here, it does not appear that anyone analyzed the conflict between the obligation to provide a speedy trial and the desire to arrest Defendant before he had notice of the charges. The record suggests that nothing of substance was ever done to locate the Defendant. And, after he was located, little of substance was done to insure that he received a speedy trial.

Placing Defendant's name in law enforcement databases would seem to be appropriate in all cases. Knowing that the Defendant was believed to be in Europe, it is inexplicable that his name was not given to European authorities when indicted and that an effort to locate him through the registry in Germany was not made. When it was learned that his girlfriend traveled regularly from Spain and Germany to the United States, it is inexplicable that no effort was made to check with authorities in Spain as well.

More damning is the delay of three years in notifying Defendant of the charges and starting extradition proceedings after the Government located the Defendant in 2004 in Marbella, Spain. The three year delay is explained by the press of other business occupying the prosecution and state department authorities

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 8**

unrelated to the extradition of the Defendant.  The Court is unaware of any doctrine that justifies the denial of a Constitutional right because of the press of other business. The Court has reviewed the papers prepared for the extradition proceedings and finds that they are less complicated than an ordinary appellate brief.   It seems that no one working for the Government considered the Government's obligation to insure a speedy trial during any of this period.  The three year delay is unacceptable.  The Court finds that the Government was negligent in pursing Defendant and bringing him to trial from 2001 until 2007.

### 3. Defendant's Assertion of his Right

Defendant was unaware that he was wanted by Government authorities until he was arrested in Spain in 2007.  He resisted the extradition on the basis of his speedy trial rights.  He was not shown the Indictment until he was arraigned in Los Angeles in 2008 where he asserted his right to a speedy trial.  Defendant's assertion of his right to speedy trial was timely.

### 4. Prejudice to the Defendant

Courts have recognized that prejudice is presumed where there has been a delay of over a year. *Mendoza*, 530 F.3d at 762.  A seven year delay requires no presumption to find prejudice.  At the evidentiary hearing, two witnesses were called:  Defendant and Brent Baker, the Security and Exchange Commission agent who investigated the case.  Both had significant problems recalling things that happened over seven years ago.  Specific witnesses with relevant knowledge are identified by the Defendant as being unable to locate. The Government has not rebutted this proffer.  The Court has no way to judge whether documents existed in 2001 but no longer exist as suggested by the Defendant.  However, such an assertion is not untenable. Companies and people normally destroy  records after a period of time has passed.  Tax records are normally destroyed after seven years. It is likely that records in this case no longer can be found.  Certainly such memories that witnesses have will be of questionable reliability making contemporary

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY** ~ 9

1 documents all the more important.

2 Additionally, in order to rebut the presumption of prejudice, the Government
3 has to show that the delay left Defendant's ability to defend himself unimpaired.
4 *See Doggett*, 505 U.S. at 658 n.4.  It has not done so.

5 Accordingly, the Court finds that prejudice has resulted from the delay.

### 5. Other Relevant Circumstances

The delay in this case is all the more prejudicial given the delay in the return of the Indictment. The period of the offense started in 1992 and ended in 1996. The indictment was returned in 2001. While this delay is not found to be a speedy trial or due process violation, it makes the post-indictment delay all the more prejudicial.  It also should have alerted the Government to make more than minimal efforts to provide the Defendant with notice of the charge.  Without such notice, the delay in trial was the exclusive responsibility of the Government.

### 6. Conclusion

After balancing the *Mendoza* factors, the Court concludes that Defendant's Sixth Amendment speedy-trial right was violated.  The seven year delay between Defendant's indictment and arrest was a result of the Government's negligence, and therefore, the Court presumes Defendant was prejudiced.  That presumption has not been rebutted by the Government.  Moreover, the Court finds actual prejudice resulted from the delay.  As a result, dismissal of Defendant's indictment is warranted.

## C. Status of Defendant's Custody

Defendant is currently in pre-trial custody.  Under Fed. R. Cr. P. 12(g), if the Court dismisses an indictment, the Court has authority to order the defendant to be released or detained for a specified time until a new indictment or information is filed.  Here, because of the statute of limitations, it is unlikely that a new indictment will be filed, so one can argue that Fed. R. Cr. P. 12(g) does not apply.

This case is unique in that Defendant was extradited from Spain, and more

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 10**

than likely, upon release will leave the United States and return to Spain. Thus, the risk of flight is great, and, to a certain extent, is to be expected. Yet, if the Government appeals this Order, and the Ninth Circuit finds that this Court erred in dismissing the Indictment, the Government will be required to start the extradition process all over again.

The Court could not find any case law that dealt with this exact issue. Given the drastic consequences if the Court erred in granting the motion, the Court stays the Order of Dismissal and release of Defendant until November 20, 2008, 12:00 p.m., in order to give the Government an opportunity to consider its options. If the Government plans on addressing Defendant's release , it shall file briefing with the Court as to its position and authorities regarding the release status of Defendant by November 18, 2008, 12:00 p.m.

The Court sets a telephonic hearing for November 20, 2008 at 10:00 a.m., to address any issues presented in the Government's briefing, if filed. If no briefing is filed, the Government shall notify the Court by telephone and Defendant will be immediately released.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss the Indictment for Pre and Post Indictment Delay (Ct. Rec. 42) is **GRANTED**.

2. The Indictment filed in the above-captioned case is **dismissed with prejudice**.

3. This Order is **stayed** until **November 20, 2008**, 12:00 p.m.

4. A telephonic status hearing is **set** for **November 20, 2008, at 10:00 a.m..** Counsel is directed to call the Court's conference line at (509) 458-6380, at the designated time.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this 14th day of November, 2008.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR PRE AND POST INDICTMENT DELAY ~ 11**

1
2          *s/Robert H. Whaley*
3          ROBERT H. WHALEY
           United States District Judge
4
5
6   C:\Temp\notesFFF692\grant5.wpd
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE
INDICTMENT FOR PRE AND POST INDICTMENT DELAY** ~ 12